J-A35022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.W. | No. 1310 WDA 2014 |

Appeal from the Order entered July 2, 2014,
in the Court of Common Pleas of Westmoreland County,
Juvenile Division, at No(s): CP-65-DP-0000094-2014

BEFORE:   BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                        **FILED JANUARY 27, 2015**

B.W. ("Father") appeals from the order which adjudicated dependent his minor son, R.W. ("Child"), born in June of 2014.[1]  We affirm.

On June 19, 2014, the Westmoreland County Children's Bureau ("WCCB") filed a dependency petition as to Child, alleging that Father was incarcerated, and that he was an indicated perpetrator of physical and sexual abuse of two of Child's half-siblings.  The petition also alleged that Child's mother ("Mother") was an indicated perpetrator of medical neglect for failing to report and failing to act after Father inflicted severe injuries on one of her children, who is Child's half-sibling.  The petition indicated that both Father and Mother were facing criminal charges.

---

[1] At the time of the adjudication, Father had submitted to a paternity test to determine whether he was the biological father of Child.  The results of that test are not contained in the certified record.  However, on appeal, both Father and the Guardian *ad Litem*, who submitted a brief as an appellee, describe Father as Child's biological parent.

A dependency hearing was held on July 2, 2014, during which the trial court heard the testimony of WCCB caseworker, Paula Cerra; Mother's therapist, Benjamin Yaroch; and L.C., Child's maternal grandmother. An order adjudicating Child dependent was entered that same day. On July 31, 2014, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father now presents the following issues for our review, which we have reordered for ease of disposition.

[I.] Whether the lower court erred in admitting hearsay testimony of lay witnesses and medical experts[?]

II. Whether the lower court erred in relying upon evidence presented at a custody hearing involving children who were not children of [Father], and to which [Father] was not a party[?]

[III.] Whether the lower court erred in denying visitation between Appellant Father and his [C]hild where the evidence did not establish by clear and convincing evidence that supervised visitation with [F]ather would pose a grave danger to the minor [C]hild and the goal in the case is reunification[?]

Father's Brief at 2.

We consider Father's issues mindful of the following:

Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower

court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.,*** 608 Pa. 9, 9 A.3d 1179, 1190 (2010) (citation omitted).

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." ***In re C.R.S.,*** 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family whenever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." ***In re R.T.,*** 405 Pa. Super. 156, 592 A.2d 55, 57 (1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." ***In re C.R.S., supra*** at 845 (citation omitted).

In regard to when a child should be removed from parental custody, we have stated:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court

determines that alternative services that would enable the child to remain with her family are unfeasible.

*In re K.B.,* 276 Pa. Super. 380, 419 A.2d 508, 515 (1980) (citations omitted). In addition, this Court has stated: "[I]t is not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from her family was clearly necessary." *In re S.S.*, 438 Pa. Super. 62, 651 A.2d 174, 177 (1994).

*In re A.B.*, 63 A.3d 345, 349-50 (Pa. Super. 2013); *see also In re E.B.*, 83 A.3d 426 (Pa. Super. 2013) (quoting *In re R.W.J.*, 826 A.2d 10, 14 (Pa. Super. 2003)) ("It is well-settled that 'a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent.'").

Father's first claim is that the trial court erred by admitting hearsay testimony during the dependency hearing. Father's Brief at 20-22. Father cites to several instances where the trial court admitted alleged hearsay evidence over the objection of counsel. *Id.* at 21-22.

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Phillips v. Lock***, 86 A.3d 906, 920 (Pa. Super. 2014) (quoting ***Stumpf v.***
***Nye***, 950 A.2d 1032, 1035-36 (Pa. Super. 2008), *appeal denied*, 962 A.2d
1198 (Pa. 2008)).

After a thorough review of the testimony presented during the
dependency hearing, we conclude that Father is not entitled to relief. Even if
we were to determine that the trial court erroneously admitted certain
hearsay testimony, this would not warrant a reversal of the trial court's
order. Even excluding the statements to which counsel objected, there was
ample testimony produced during the hearing to support the adjudication of
dependency.

Ms. Cerra, the WCCB caseworker, testified that Child's half-sibling,
A.M., was hospitalized due to "acute injuries to the scrotum." N.T.,
7/2/2014, at 47. However, at the time A.M. was hospitalized, it was
determined that A.M. had pre-existing facial injuries. A.M.'s facial injuries
were beginning to heal, and it appeared that they had been inflicted days
before the hospitalization. ***Id.*** at 47, 64-66. Medical reports indicated that
A.M. was still in severe pain as a result of his facial injuries at the time he
was hospitalized, and Ms. Cerra confirmed, during cross-examination by
Father's counsel, that the physician who examined A.M. indicated that "those
injuries would have caused severe pain and did require medical attention."
***Id.*** at 48, 65.

Additionally, when Mother sent a picture of A.M.'s face to his biological father, the father reacted with concern. *Id.* at 59. Mother responded by stating multiple times that she did not want to get others involved, so that she would not be investigated. *Id.* at 59-60. Ms. Cerra testified that, had she been made aware of A.M.'s facial injuries at the time they occurred, she would have put a safety plan in place. *Id.* at 64. She noted that she saw a picture of A.M.'s face taken prior to his hospitalization, and that she believed A.M. needed medical care based on viewing the picture. *Id.* at 30.

In sum, the testimony presented during the dependency hearing established that A.M. suffered facial injuries causing severe pain, that the seriousness of A.M.'s injuries was apparent, and that the injuries remained untreated for days until A.M. was finally hospitalized as a result of injuries to his scrotum. This evidence by itself is sufficient to affirm the adjudication of dependency, as it demonstrates that Mother and Father had, at the very least, subjected A.M. to extreme neglect. Based on this neglect, it was reasonable for the court to conclude that Child is without proper parental care or control, as Mother and Father have proven themselves incapable of providing care that is likely to prevent serious injury to Child. *See In re G.T.*, 845 A.2d 870, 874 (Pa. Super. 2004) (holding that a child could be adjudicated dependent where her parents failed to seek medical treatment for the child's sister, on the basis that the Court could "assume that any

medical problem [the child] might have developed would have been similarly ignored").

Father's next issue is that the trial court abused its discretion by adjudicating Child dependent based on evidence presented at a custody hearing involving Mother and the father of Child's half-siblings. Father's Brief at 16-19. Father directs our attention to the findings of fact that were issued by the trial court in conjunction with its dependency order, and contends that the trial court erroneously took judicial notice of testimony and exhibits presented at the custody hearing in order to support these findings. *Id.* at 18-19.

Again, we conclude that Father is not entitled to relief. As we explained, *supra*, there was ample testimony presented during the dependency hearing to support the court's conclusion that Child should be adjudicated dependent. Thus, even if we were to conclude that the trial court erred by taking judicial notice of evidence presented at the custody hearing, reversal of the trial court's order would be unwarranted.

Finally, Father argues that the trial court erred by denying him visitation with Child. *Id.* at 9-16. This Court has explained that, in dependency cases, "[w]here . . . reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat." *In re C.B.*, 861 A.2d 287, 293 (Pa. Super. 2004), *appeal,*

*denied*, 871 A.2d 187 (Pa. 2005) (quoting ***In re B.G.,*** 774 A.2d 757, 760 (Pa. Super. 2001)).

> The "grave threat" standard is met when "the evidence clearly shows that a parent is unfit to associate with his or her children;" the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

***Id.*** (quoting ***In re C.J.,*** 729 A.2d 89, 95 (Pa. Super. 1999)) (citations omitted).

Here, while Father attempts to distinguish this matter from the facts of ***C.B.*** and other cases, it is clear that he is not entitled to relief. Again, sufficient evidence was presented during the hearing to support Child's adjudication of dependency. Additionally, evidence was presented to support the conclusion that Father was the perpetrator of the abuse suffered by A.M.

Ms. Cerra testified that Mother's explanation for A.M.'s injuries was not consistent with the information she received from medical personnel. ***Id.*** at 23-24. Ms. Cerra noted that there was no evidence that Mother had caused the injuries, and that, as far she knew, Mother was not home at the time A.M.'s scrotal injuries were sustained. ***Id.*** at 18, 24. Instead, Ms. Cerra's testimony indicated that Father inflicted A.M.'s injuries. For example, Ms. Cerra testified, without objection, that "there was a disclosure made" that A.M. had also been subjected to heinous acts of sexual abuse by Father. ***Id.*** at 25. Ms. Cerra noted that Mother's other children had been interviewed,

and that one indicated that he had been "hit and kicked by [Father]." *Id.* Thus, the evidence established that Father has demonstrated a severe mental or moral deficiency that constitutes a grave threat to Child. No relief is due.

Accordingly, because we conclude that the trial court did not abuse its discretion by adjudicating Child dependent, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2015