J-S11032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: CHANGE OF NAME P.C.K., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DAVID F. REED | : : : : : : : : | |
| | : | No. 1354 WDA 2021 |

Appeal from the Order Entered October 14, 2021
In the Court of Common Pleas of McKean County
Civil Division at No(s):  No. 469 CD 2021

BEFORE:  PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: July 26, 2022**

David F. Reed ("Father") appeals from the trial court's order denying his petition for a change of name of his minor child, P.C.K. ("P.C.K.").  We affirm.

In August 2021, Father filed a petition to change eight-year-old P.C.K.'s surname from K. to Reed.  Father asserted as the reason for the change that he was P.C.K.'s birth father, and he wanted P.C.K. to share his surname.  *See* Father's Petition, 8/23/21, at ¶ 5.

The trial court scheduled the name change hearing for October 6, 2021. The court directed Father to publish notice of the petition and the hearing, and to serve that notice on P.C.K.'s non-petitioning parent.  On September 7, 2021, Father filed an amended petition which only differed from the original petition by revising Father's address.  Father published the required notice and served it on P.C.K.'s mother, Jamie Rhodes ("Mother").  The trial court did not change the date of the hearing, nor did Father request a new date.

On October 6, 2021, Father and Mother and their attorneys appeared for the hearing. Mother objected to the hearing because the statute addressing change of name petitions contains a subsection that requires the hearing to take place no earlier than the thirtieth day after the filing of the petition,[1] and the amended petition had been filed twenty-nine days earlier. N.T., 10/6/21, at 5-9. At Father's request, and over Mother's repeated objection, the court conducted the hearing on Father's petition. *Id*. at 12.

Father testified that Mother's boyfriend at the time of P.C.K.'s birth had the surname "K." and that Mother had never used that surname. N.T., 10/6/21, at 15-17. Father testified that he and P.C.K. are close and that their relationship is "[a]wesome" and "extremely good." *Id*. at 17-18, 20-21. He said that his reason for requesting the name change was "pride, it's a matter of family, I'm proud of my name." *Id*. at 18. Father asserted that the fact that he and P.C.K. have different surnames could cause problems at school or in travel. *Id*. at 17-18.

Mother testified that she had planned to marry Mr. K., and that when P.C.K. was born she wanted them all to share the same surname. She therefore gave P.C.K. the surname "K.," although she knew that Father was P.C.K.'s biological father. N.T., 10/6/21, at 23.[2] P.C.K., who is eight years

---

[1] *See* 54 Pa.C.S.A. § 701(a.1)(3)(i).

[2] Mother testified that Father harassed her during her pregnancy, threw a beer bottle at her, and sent her disturbing text messages. *Id*. at 22, 31.

old, has always had the same surname as his seven-year-old half-brother, who is Mother's child with K. P.C.K. and his half-brother are known at school as brothers. *Id*. at 24-26. Mother expressed her concern that a name change might affect the brothers' relationship. *Id*. at 27-28. She also did not believe P.C.K. was currently mature enough to understand the implications of a name change. *Id*. Further, Mother was unaware of any psychological problems P.C.K. had experienced as a result of his surname. *Id*. She testified that P.C.K.'s surname has never caused a problem in school or affected his ability to travel with his Father: they had taken two trips to Florida in the preceding three years without incident. *Id*. at 28-29. Mother's romantic relationship with Mr. K. continued until P.C.K. was six and one-half years old, and P.C.K. retains an affectionate relationship with him. *Id*. at 22-29, 36.

At the conclusion of the entire hearing, Mother moved for a directed verdict, asserting that Father had not met his burden to prove the name change was in P.C.K.'s best interest. The trial court held the case under advisement.

Eight days later, the trial court issued its order. The order stated that the best interest of the child standard applies to a petition to change a minor child's name, the petitioner bears the burden of coming forth with evidence that the name change would be in the child's best interest, and that at the hearing, Father "provided insufficient evidence on how a name change would be in Child's best interests: specifically, there was insufficient evidence to

show that a name change would improve the bond between Child and his parents and there was no indication that Child has suffered social stigma within his community." Order 10/14/21, at ¶¶ 2-3. The Court declared that Mother's motion for a directed verdict was granted and Father's petition for a change of name was denied. Father timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Father presents the following issues for our review:

1. Whether the trial court erred by abusing its discretion in determining that [Father] did not meet his burden to show that granting the amended petition for change of name would be in the best interests of [P.C.K.].

2. Whether the trial court erred by abusing its discretion and denying [Father]'s amended petition for change of name by not following proper procedure when conducting the hearing on the petition for change of name.

3. Whether the trial court erred by abusing its discretion and denying [Father]'s amended petition for change of name by granting [Mother's] request for directed verdict.

Father's Brief at 4-5 (unnecessary capitalization eliminated).

Father asserts in all three issues that the trial court abused its discretion. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill-will. **See Steltz v. Meyers**, 265 A.3d 335, 347 (Pa. Super. 2021).

As this Court has stated concerning a trial court's review of a petition to change a minor's surname:

> [T]he child's best interests unquestionably must control the trial court's discretion in a proceeding to change a minor's surname. Further, the party petitioning for the minor child's change of name has the burden of coming forward with evidence that the name change requested would be in the child's best interest, and . . . where a petition to change a child's name is contested, the court must carefully evaluate all of the relevant factual circumstances to determine if the petitioning parent has established that the change is in the child's best interest.

*In re C.R.C.*, 819 A.2d 558, 560 (Pa. Super. 2003) (citations, quotation marks, and brackets omitted).

Our Supreme Court has set forth the considerations relevant to a child's best interests:

> Specific guidelines [for a child's best interests] are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. However, general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name.

*In re E.M.L.*, 19 A.3d 1068, 1071 (Pa. Super. 2011) (citations omitted).

When reviewing a trial court's determination of the best interests of the child, an appellate court is

> not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by

findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Sawko v. Sawko*, 625 A.2d 692, 693 (Pa. Super. 1993) (citation omitted).

In his first issue, Father argues that the trial court abused its discretion by determining that he did not establish that the name change would be in P.C.K.'s best interest. He asserts that Mother has two older children to whom she gave her own birth surname, that Mother deceived him about his paternity,[3] that he wants to share his surname with P.C.K., and that Mr. K. has no current relationship with P.C.K. *See* Father's Brief at 12-13.

The trial court determined that Father failed to provide sufficient evidence to demonstrate that a name change would be in P.C.K.'s best interest. The trial court found no evidence that a name change would improve P.C.K.'s bond with his parents, and no indication that P.C.K. had experienced social stigma within the community as a result of his surname. *See* Order, 10/14/21, at ¶ 3.[4]

We discern no abuse of discretion in the trial court's ruling. Father did not demonstrate in his petition or his testimony that the proposed name

---

[3] Mother conceded that she misled Father about P.C.K.'s paternity. *See* N.T., 10/6/21, at 25.

[4] The trial court noted that because Father had not called P.C.K. as a witness, it could not make a finding about the eight-year-old's intellectual and rational understanding of the significance of the name change. *See* Order, 10/14/21, at ¶ 3.

change was in P.C.K.'s best interest. That Father desired the change was not sufficient evidence to make that showing. Father's failure to meet his burden to come forward with evidence that the name change would be in P.C.K.'s best interest was a sufficient basis for the trial court to deny the petition. **See C.R.C.**, 819 A.2d at 560-63 (reversing the change of a minor child's name where the moving parent failed to come forward with evidence that the change would be in the child's best interest, and also rejecting the speculative conclusion that the child's relationship with the moving parent would suffer as a result of their having different surnames).[5]

Additionally, Father testified that he and P.C.K. had an excellent relationship despite their different surnames.[6] Father offered no evidence of a stigma associated with P.C.K.'s surname. Father offered no support for his suggestion that a problem might arise at school or in travel because he and P.C.K. had different surnames. To the contrary, Mother testified that there had never been a problem at school concerning the surname, and that Father

---

[5] Father did not assert that Mother interfered in his relationship with P.C.K. Even had she done so, that alone would not be sufficient grounds to grant the name change. **See C.R.C.**, 819 A.2d at 562.

[6] **See C.R.C.,** 819 A.2d at 563; **see also T.W. v. D.A.**, 127 A.3d 826, 829 (Pa. Super. 2015) (denying a claim that the trial court abused its discretion by denying a petition to change a minor child's name where, among other factors, the petitioner presented no evidence that the child's different surname compromised their bond).

had traveled twice in the preceding three years to Florida with P.C.K. without incident. Finally, Mother's testimony suggested that P.C.K.'s relationship with his half-brother, with whom he shares his surname, might be impaired should the petition be granted. The trial court's ruling was therefore supported by evidence of record and not an abuse of discretion.[7]

Father asserts in his second issue that the trial court did not follow proper procedure when conducting the hearing. In his 1925(b) statement, Father failed to specify any procedural error the trial court allegedly committed. **See** Rule 1925(b) Statement, 12/7/21, at ¶ 3. We could find his claim waived on that basis. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346-48 (Pa. Super. 2007) (holding that a concise statement that is too vague to allow the court to identify the issues on appeal is the functional equivalent of no Rule 1925(b) statement, and the issues are thus waived even if the trial court correctly guesses what they are). That said, we decline to find waiver as to the claim that the trial court addressed: that it erred by conducting the

---

[7] Father cites the unpublished memorandum decision in **In re L.J.M.**, 266 A.3d 615, 2021 WL 4621971 (Pa. Super. 2021), which he is permitted to cite for its persuasive value. **See** Pa.R.A.P. 126(b); Father's Brief at 10-12. **L.J.M.** is distinguishable. The **L.J.M.** panel found no abuse of discretion in the trial court's determination that a change of the child's surname to the father's would provide stability in the child's best interest where the mother had first sought to give the child her maiden surname, then sought to give the child a hyphenated combination of her married surname and of father's surname. 2021 WL 4621971 at *1-3. In **L.J.M.**, unlike here, the parties **agreed** that the child's name should be changed in some way. Moreover, P.C.K. had the same surname all of his life, which undermines Father's assertion that the name change would give him "stability" in his surname. Father's Brief at 13.

hearing on the twenty-ninth day after Father filed the amended petition, one day before the statute prescribed. *See* 54 Pa.C.S.A. § 701(a.1)(3)(i).

The trial court noted that it held the hearing thirty-seven days after Father filed his original petition, and that the amended petition did not substantively change the original petition, but only changed Father's address. The court accordingly concluded that no error occurred or, in the alternative, that the conduct of the hearing on the twenty-ninth day after the filing of the amended petition did not prejudice either party. *See* Trial Court Opinion, 12/9/21, at 6 (unnumbered).

We discern no abuse of discretion in the trial court's determination. Pennsylvania Rule of Civil Procedure 126, "Liberal Construction and Application of Rules," provides that the Rules of Civil Procedure are to be liberally construed to secure the just, speedy, and inexpensive determination of any applicable action or proceeding. *See* Pa.R.Civ.P. 126. In service of that goal, the Rule provides that a court may "disregard any error or defect of procedure which does not affect the substantive rights of parties." *Id*. Father does not assert that the hearing date—which was at Father's insistence and over Mother's objection—affected his substantive rights.[8] The lower court

---

[8] When Mother asserted prior to the hearing that it was one day premature, Father argued, to the contrary, that he had amended his petition to cure a non-material scrivener's error, and he urged the court to conduct the hearing. *See*, N.T., 10/6/21, 10-13.

therefore did not abuse its discretion in denying Father's claim. *See* Pa.R.Civ.P. 126; *see also Hogg Construction, Inc. v. Yorktown Medical Center, L.P.*, 78 A.3d 1152, 1158 (Pa. Super. 2013) (holding that where a party had not argued that a procedural error unfavorably affected his rights, the trial court's grant of relief to that party was a reversible error that elevated form over substance).[9]

Father's third issue asserts that the trial court abused its discretion by granting a directed verdict to Mother because the proceeding was not a trial, and because the trial court failed to consider P.C.K.'s best interest. Father's Brief at 16-17.

The trial court declared that it was granting Mother's motion for a directed verdict **and** denying Father's petition for a change of name. *See* Order, 10/14/21, ¶ 4. In explaining its order, the court declared that the standard applicable to the petition was the best interest of the child, Father bore the burden to come forth with evidence that the name change would be

---

[9] Father also asserts that the trial court did not understand the applicable statute, tainting his case and directly affecting the outcome, because the court initially believed that the petition could not be granted without Mother's consent. Father's Brief at 15. Father did not make this assertion in his 1925(b) statement, and the trial court did not address it. Thus, it is waived. *Tucker*, 939 A.2d at 346. We further note that Father does not cite any case law to support his claim, and that the trial court did apply the applicable best interest of the child analysis in denying Father's petition. *See* Order, 10/14/21, ¶¶ 2-3.

in P.C.K's best interest, and Father had failed to provide sufficient evidence that the name change would be in P.C.K.'s best interest; specifically, Father failed to show that a name change would improve his bond with P.C.K. or that P.C.K. suffered social stigma within his community resulting from his surname. *See* Order 1/14/21, at ¶¶ 2-3. For those reasons, the court stated that it was granting a directed verdict for Mother and denying Father's name change petition.[10]

We conclude that the trial court did not abuse its discretion in rendering its decision. We have found no case law that permits a court to grant a directed verdict in response to a contested petition for change of name, and do not affirm the decision on that basis. However, we are mindful both that the dispositive issue in this case is whether the trial court properly denied Father's petition for change of name, and that the trial court's order purporting to grant a directed verdict also stated that the court denied Father's petition because it failed to meet the requirements of the case law addressing change of name petitions. The trial court applied the proper standard of review to Father's petition, and the record supports the trial court's finding that Father failed to come forward with evidence that the requested name change was in

---

[10] In its Rule 1925(b) opinion, the trial court opines that its grant of a directed verdict was not error or, if error, was harmless because it would have denied the petition even had Mother not moved for a directed verdict. *See* Trial Court Opinion, 12/9/21, at 8 (unpaginated).

- 11 -

P.C.K.'s best interest. **See** Order, 10/14/21, ¶¶ 2-3 (applying best interest standard to Father's petition and concluding that he had not come forward with evidence that the requested name change was in P.C.K.'s best interest because he did not show that P.C.K.'s surname impaired their bond or caused P.C.K. to experience social stigma).[11]

The record supports the trial court's conclusion that Father failed to show that the requested name change was in P.C.K.'s best interest. The trial court therefore did not abuse its discretion in concluding that the name change petition should not be granted, and we affirm the denial of relief on that basis. **See Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2013) (Superior Court may affirm a trial court's ruling on any basis supported by the record on appeal).[12]

Order affirmed.

_____

[11] The record contains additional support for the trial court's finding. **See** N.T. 10/6/21, at 24-26 (Mother's testimony that P.C.K. has always had the same surname as his seven-year-old half-brother and that they are known at school as brothers); **id**. at 28-29 (Mother's testimony that P.C.K.'s surname has never caused a problem in school or affected his ability to travel with Father).

[12] As discussed, we conclude that the trial court properly applied the best interest standard in assessing Father's petition. We discern no merit in Father's contrary assertion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/26/2022